UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROLAND BROWN,

       Plaintiff,                          **Case No.: 3:15-cv-161-MCR/EMT**

v.

UNITED OF OMAHA LIFE INSURANCE COMPANY,

       Defendant.
_____/

**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS WITH INCORPORATED MEMORANDUM OF LAW**

COMES NOW the Plaintiff, by and through the undersigned attorney, and files his Motion for Attorneys' Fees and Costs and in support thereof would state as follows:

1. Plaintiff Roland Brown ("Brown") brought this action against Defendant United of Omaha Life Insurance Company ("United") for wrongful termination of long-term disability ("LTD") benefits pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Doc. 1.

2. Brown filed a Motion for Summary Judgment ("MSJ") requesting the Court find that United's decision to terminate Brown's benefits violated the requirements of ERISA, and to reinstate his benefits. Doc. 39.

3.     On September 1, 2016, this Court issued its Order granting Brown's MSJ in part and finding that United deprived Brown of a full, fair, and accurate review and was both *de novo* wrong and arbitrary and capricious as a matter of law. Doc. 58.

## MEMORANDUM OF LAW

Pursuant to 29 U.S.C.A. §1132(g)(1), the court has discretion to allow a reasonable attorney's fee and costs of action to either party in an ERISA action. When a party moves for attorney's fees and costs, the Eleventh Circuit has enumerated five factors for guiding courts in determining fee awards under section 1132(g)(1): the court should consider the following: (1) the degree of opposing parties' culpability or bad faith, (2) the ability of opposing parties to satisfy award of attorney fees, (3) whether award of attorney fees against opposing parties would deter other persons acting under similar circumstances, (4) whether parties requesting attorney fees sought to benefit all participants and beneficiaries of ERISA plan or to resolve significant legal question regarding ERISA itself, and (5) the relative merits of parties' positions. *Cross v. Quality Management Group, LLC*, 491 Fed.Appx. 53, 55-56 (11th Cir. 2012); *See also Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255 (5th Cir.1980). No single factor is dispositive and some may not apply in certain situations. *Bowen*, 624 F.2d at 1266.

The first factor, United's culpability or bad faith, is clearly present. As the

Court has already found, United acted arbitrarily and capriciously in ignoring the advice of its own consultants and declining to inquire further into Brown's condition by requiring an independent medical examination ("IME"). A similar situation occurred in *Sullivan v. Continental Casualty Co.*, 2007 WL 1362923 (M.D.Fla. May 9, 2007), wherein the insured filed a motion for attorney's fees and costs after succeeding on his ERISA disability case. In analyzing the first factor, the court noted that despite the insured's efforts to direct the carrier to the appropriate job description at the administrative phase prior to suit, it never had any doctor review the insured's correct job description to determine its effect on their findings. *Id*. at *1. As a result, the insured had to litigate that very point. The court concluded that the insurer bore culpability for this admission, which proved to be important to the eventual result. *Id*.

Likewise, here United willfully decided not to fully investigate Brown's claim and order an independent medical examination. This was done despite United's knowledge that Brown was unable to afford medical care, despite his pleas that United send him to a doctor, despite knowing that Brown was taking prescription pain medication, despite United's own nurse's recommendation that it contact the treating physician for more information, and despite United's paid medical consultant's conclusion that Brown could have valid complaints but that the record

3

was incomplete, that more diagnostic imaging was needed. Instead of ordering an IME, as permitted by the LTD policy at issue, United simply took the easy route and denied Brown's claim.[1] Similar to *Sullivan,* had United been concerned with providing Brown with a full, fair, and accurate review and gotten this evidence, it would prove to be important to the eventual result. *See also Barlow v. Sun Life & Health Ins. Co.*, 2011 WL 3475298. *1 (M.D.Fla. Aug. 9, 2011) (finding insurer culpable where it relied on "scant, ambiguous, and flawed" evidence to conclude that insured could return to her past occupation); *Blankenship v. Smithline Beecham Corp.*, 2004 WL 3554969, *2 (S.D.Fla. Aug. 16, 2006) (finding that insured acted culpably in failing to fully examine insured's claim and conducted only a paper review).

The second factor, ability to pay, weighs in favor of a fee award. United's

---

[1] As this Court succinctly stated, "After reviewing the depositions of Pope and Smith, the court is left with the distinct impression that it seems unlikely they would use an independent medical examination unless necessary to *dispute* a claimant's evidence of disability, not to garner support for a claim." Doc. 58, pg 12 of 14, fn. 6. The clarity of United's bad faith claim denial is further illustrated by its substantial efforts to keep this evidence away from the Court's review, as a motion to compel the taking of United's claim reviewers' depositions was necessary despite the Court's initial Order allowing such discovery to occur. *See* Docs. 11, 22, 24, 25, 28, 29, 30, and 47. That such litigation conduct was employed to further bury the evidence of bad faith claim denial conduct should not go unnoticed by the Court, as it was only though the sustained efforts of undersigned counsel that this evidence was uncovered and brought to the attention of the Court.

assets currently total over thirty-eight (38) billion dollars. *See* Exhibit A, pg 3 (Mutual of Omaha Insurance Company and Subsidiaries Executive Summary and Analysis of Financial Condition as of June 30, 2016 and December 31, 2015).[2] Thus, it is patently obvious that United is fully able to satisfy any award of attorney's fees and costs. *See Fornell v. Morgan Keegan & Co., Inc.*, 2013 WL 656321, *5 (M.D.Fla. Jan. 11, 2013) (finding that respondent had the financial capacity to pay petitioner's fees based upon financial statements submitted by petitioner showing a net income of over twenty-two (22) million dollars).

The third factor, deterrence of wrongful conduct, fits well into the analysis of an award to be assessed against ERISA defendants. In most cases, insurers facing the prospect of bearing the cost of the insured's attorney fees will serve as an adequate deterrent from engaging in this type of egregious behavior. Thus, this factor weighs heavily in favor of a fee award. *See Thomas v. CSX Corp.*, 2005 WL 2756214, *4 (M.D.Fla. Oct. 25, 2005) (finding deterrent value in awarding fees where plan sponsor forced beneficiary to hire a lawyer to pursue them); *Blankenship*, 2004 WL at *2 (holding that granting an award of fees and costs would deter other entities acting in similar conduct when faced with clear statements of disability from

---

[2]United of Omaha Life Insurance Company is a subsidiary of Mutual of Omaha. Exhibit A, pg 6.

insured's treating physician that she was unable to return to her job); *Fornell,* 2013 WL at *5 (finding that a fee award could influence respondent to better supervise their representatives). This Court's admonition to United, that it follow the advice of its own medical claim consultants as argued by Brown, goes far in deterring this carrier's wrongful conduct not merely to the instant Plaintiff, but to all claimants similarly situated.[3]

The fourth factor also is a close fit with the analysis of a fee award to an ERISA plaintiff. In this case, hundreds - if not thousands - of individuals are insured under the LTD policy at issue. This certainly indicates that the issue at bar holds significance from the perspective of the policy as a whole. The resolution of whether an insurer has a duty to inquire into an insured's health by requiring an IME is a significant legal question and is a matter of considerable importance to participants in a plan that serves a corporation such as this. Moreover, this importance is only magnified when compared to the actual handling of the claim by United's claim

---

[3]The importance of the duty to fully and fairly evaluate a claimant's medical condition derives from United's fiduciary obligation to Brown. "ERISA's duty of loyalty is the highest known to the law." *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 294 (5th Cir. 2000). A "fiduciary shall discharge his duties with respect to a plan solely in the interest of the participant." 29 U.S.C. § 1104(a)(1)(A). Clearly this Court's summary judgment in Brown's favor may have little deterrent effect on United's conduct if it is not accompanied by an obligation to pay attorney's fees to those who worked so hard to show the aforementioned violation of fiduciary duty owed to its insured.

examiners, who testified under oath to their lack of any interest in ordering a medical exam for claimants generally or Brown specifically. *See infra* at fn. 1. The fourth factor clearly supports a fee award.

The fifth and final factor, the relative merits of the parties' positions, turns on the degree of disparity in the merits of the parties' positions; that is, whether the losing party's position was so insubstantial that equity should compensate the winning party with an award of attorney fees. This factor should be viewed as a complement to the first factor. When bad faith or culpability is established, as is the case here, this factor need not be consulted. Even if it were, however, United's defense was to merely point out that Brown had the burden of proof, thus ignoring its duty under ERISA to conduct a full and fair review, and its concomitant obligation to follow (rather than totally ignore) the many suggestions of its medical consultants to determine a claimant's medical status thru an IME that its own policy provides is appropriate. Thus, United's position had very little merit, and while an accurate statement of the law, its position paled in comparison to that of Brown's factual evidence that United's own medical consultants were ignored in order to deny Brown's claim.

In sum, an analysis of the five factors yields the conclusion that United should be taxed with Brown's attorney fees. The total amount claimed by the undersigned

attorney for fees, costs and expenses is itemized and shows as follows:

Attorney Fees and Costs

| | | | | |
|---|---|---|---|---|
| (1) | 221.80 hours, at $475.00/hour (DMS) | = | $105,355.00 |
| | 135.60 hours, at $275.00/hour (KAC) | = | $ 37,290.00 |
| | 8.30 hours, at $115.00/hour (Paralegal) | = | $     954.50 |
| (2) | costs and expenses | = | $   4,286.16 |
| | Total | = | $147,885.66 |

WHEREFORE, premises considered, the undersigned attorney respectfully requests the Court grant his Motion for Attorneys' Fees and Costs, and if necessary, set an evidentiary hearing for undersigned counsel to submit their time records and hourly rates to establish the appropriate hourly rates through expert testimony consistent with the lodestar method outlined in *Perdue v. Kenny A. ex rel Winn*, 130 S.Ct. 1662, 1672 (2010).[4],[5]

---

[4] Undersigned counsel do not file their time ledgers with this motion for two reasons. First, until the Court grants this motion, the specific time entries are not at issue. Second, this case is still ongoing as it is being remanded back to the administrator for a new determination, and certain portions of undersigned counsel's time ledgers are subject to attorney-client privilege. However, at the Court's request, undersigned counsel will provide their time ledgers for *in camera* inspection.

[5] In an effort to resolve the issue of attorneys' fees and costs directly with opposing counsel, undersigned counsel intends to provide them with those portion of their time ledgers not subject to attorney-client privilege.

## LOCAL RULE 7.1(B) CERTIFICATION

The undersigned hereby certifies that she has conferred with counsel for United concerning this motion. United opposes Brown's motion.

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Local Rule 7.1(F), counsel for Brown hereby certifies that this motion has 2,065 words.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of September, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF filing system which will send a notice of electronic filing to Henry T. Morrissette, Esq., Hand Arendall, Inc., P.O. Box 123, Mobile, AL 36601, hmorrissette@handarendall.com.

/s/ Kimberly A. Corkill
Kimberly A. Corkill
Florida Bar No.: 84942
kcorkill@bellsouth.net
Daniel M. Soloway
Florida Bar No.: 508942
dsoloway@bellsouth.net
Soloway Law Firm
1013 Airport Blvd.
Pensacola, FL 32504
(850)471-3300 (T)
(850)471-3392 (F)